# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JIMMY BROWNRIGG,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-14-301-JHP-SPS |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Jimmy Brownrigg requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born May 6, 1977, and was thirty-five years old at the time of the administrative hearing (Tr. 37). He completed the twelfth grade, and has worked as a welder and construction laborer (Tr. 25, 169). The claimant alleges an amended onset date of February 17, 2011, due to dyslexia; pain in his back, knees, and neck; and depression (Tr. 36, 169).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on March 31, 2011. His applications were denied. ALJ John Antonowicz conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated December 13, 2012 (Tr. 18-26). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a) (Tr. 22). The ALJ concluded that although the claimant could not return to his past relevant work, he was

nevertheless not disabled according to Rule 201.28 of the Medical-Vocational Guidelines, *i. e.*, "the Grids" (Tr. 26).

### Review

The claimant contends that the ALJ erred: (i) by incorrectly applying Fifth Circuit law; (ii) by failing to incorporate postural limitations assessed by state reviewing physicians, never asking the vocational expert ("VE") questions related to the assigned RFC, and allowing the VE to list jobs in Texas rather than Oklahoma; (iii) by improperly assessing the opinion of his treating physician, Dr. Michael Irvin; (iv) by failing to property account for his pain; and (v) by failing to properly analyze his credibility. The undersigned Magistrate Judge finds that because the ALJ failed to properly evaluate the claimant's pain in determining his RFC at step four, and compounded this error in applying the Grids at step five, the decision of the Commissioner should therefore be reversed and the case remanded for further analysis.

The ALJ found that the claimant had the severe impairment of degenerative disc disease status post lumbar discectomy and cervical fusion surgery, as well as the nonsevere impairments of knee pain and adjustment disorder with depressed mood (Tr. 20-21). In 1999, the claimant underwent left knee arthroscopic surgery due to partial tear and stretching anterior cruciate ligament left knee and lateral meniscal tear left knee (Tr. 500). On July 28, 2010, as a result of his complaints of continued back pain, the claimant's physician ordered a helical CT of the lumbar spine without contrast which revealed degenerative disc disease and spondylosis, L5-S1; central/right paracentral large spondylitic spur versus calcified disk protrusion, and further MRI if clinically indicated

(Tr. 283, 289). Medical records from August 9, 2010, containing a CT of the lumbar without contrast, revealed extruded central and right paramedical disk, L5-S1 with cephalad migration and compression of the right L5 nerve root, which correlated to a partially calcified disc seen on the CT lumbar spine (Tr. 281). On August 25, 2010, the claimant underwent a right L5-S1 microlumbar discectomy (Tr. 329). Due to continued pain, the claimant underwent a second micro lumbar discectomy, right sided, L5-S1, on February 17, 2011 (Tr. 308).

The claimant then began experiencing bilateral hand numbness and right shoulder pain, and an abnormal EMG revealed bilateral median neuropathy and ulnar neuropathy bilaterally at the elbow, with subacute C6 radiculopathy on the right, chronic radicular changes C6 distribution bilaterally and C6 distribution on the left (Tr. 339-340). He then underwent a right C5-C6 anterior cervical discectomy and fusion with anterior instrumentation on August 17, 2011 (Tr. 548, 595). Following an incident in which the claimant was in a vehicle that hit a deer, the claimant underwent a CT of the spine without contrast, which revealed post-fusion changes cervical spine without evidence of fracture, and scattered adenopathy (Tr. 803).

The claimant was seen by treating physician Dr. Albert McLemore at a rural health clinic on November 17, 2011, and was treated for chronic back pain (Tr. 612). Dr. McLemore had also referred the claimant to Southeastern Oklahoma Neurosciences, where the claimant continued to complain of diffuse low back and neck pain, and the treating staff, Doug Duffy, PA-C, and Kim Pratt, M.D., discussed deconditioning and the need for formal physical therapy (Tr. 737). On October 17, 2012, the claimant reported

to Dr. Michael Irvin, DO, that he had continued low back pain in the lumbar spine that did not radiate, which was chronic, *i. e.*, constant, pain (Tr. 782). That same day, Dr. Irvin completed a physical RFC assessment, noting a five-year treatment relationship and the claimant's diagnoses of back pain, right shoulder pain, and bilateral knee pain, with a fair prognosis (Tr. 832). He stated that the claimant experienced severe pain, which worsened without movement and bending, and identified clinical findings including the MRI of the lumbar spine and an X-ray of the right shoulder (Tr. 832). He indicated that the claimant's anxiety contributed to his impairments, and that the claimant's pain would frequently interfere with his attention and concentration, stating, "Pt is in pain too much to work" (Tr. 833). He indicated that the claimant could sit/stand/walk less than two hours in an eight-hour workday, that he needed to include periods of walking around every fifteen minutes for five minutes at a time, that he needed to shift from sitting to standing at will, would need unscheduled breaks, and would need a cane to ambulate (Tr. 833-834). Additionally, he indicated that the claimant could only occasionally lift less than ten pounds, and never twist, stoop, crouch, or climb ladders or stairs (Tr. 834). Finally, he indicated that the claimant could use his right hand and fingers 25% of an eight-hour workday, and left hand and fingers 50%, and that he would be absent from work more than four days per month (Tr. 835).

On October 6, 2011, Dr. Terry L. Kilgore, M.D., conducted a physical examination of the claimant. He assessed the claimant with cervical disc disease status post surgery July 2011, lumbar spine disc disease status post discectomy July 2010 and December 2010; back pain with sciatica secondary to above; bilateral knee pain;

arthroscopic surgery knees 10 years prior; depression; and a history of dyslexia (Tr. 573). He stated that the claimant appeared to have reactive depression and was mildly depressed, and that his dyslexia did not appear to be severe, but that his main problems were back and neck pain, including restricted range of motion of the back and sciatica into the right leg, as well as restricted range of motion involving his neck (Tr. 573-578).

A state reviewing physician found the claimant could perform sedentary work, with postural limitations of never climbing ladders/ropes/scaffolds; only occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, or crawling; and avoiding all exposure to hazards (Tr. 580-583).

At the administrative hearing, the claimant testified as to his impairments, including back and neck pain. The claimant indicated that his pain had not been alleviated by the surgeries, and the ALJ asked the claimant about notations in the record from April 2011, in which the claimant reportedly was feeling fine (Tr. 43-44). The claimant testified that his doctor told him that after three surgeries it might take his body a while to get better (Tr. 44). He testified that he can sit for twenty to thirty minutes at a time or stand about thirty minutes, but that his back and neck get stiff so that he has to get up and move around or lay down (Tr. 46). He testified he could lift no more than ten pounds, and that he spends about three out of seven days a week in bed for four to five hours a day (Tr. 47). Furthermore, he testified that he still experiences tingling and numbness in both hands, but that the right is worse than the left (Tr. 49-50). He testified that the pain interferes with his concentration so that he cannot focus, on a daily basis (Tr. 51).

The ALJ summarized the claimant's hearing testimony and discussed the medical evidence. He found that the medical evidence supported a finding that the claimant could perform sedentary work, and assigned great weight to the opinion of the state reviewing physician (Tr. 24). The ALJ then found that the claimant was not disabled.

The claimant contends that the ALJ improperly disregarded findings in the record related to his impairments and failed to properly account for his pain. In this regard, the ALJ noted the claimant's assertions of pain but essentially rejected them by wholly failing to assess them, despite finding that the claimant suffered from multiple severe pain-inducing impairments. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) *and Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).

Because there was objective evidence that the claimant had a pain-producing impairment, *i. e.*, degenerative disc disease, the ALJ was required to consider the claimant's pain and the extent to which it was disabling. And because the ALJ found that

-8-

the claimant's degenerative disc disease was a severe impairment at step two, *i. e.*, having more than a minimal effect on his basic work activities, it is "impossible to conclude at step four that h[is] pain was insignificant." *Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003); *see also Duncan v. Apfel*, 1998 WL 544353, at *2 (10th Cir. 1998) ("We note the inconsistency of finding that a pain syndrome is severe at step two and insignificant at step five."). *See also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).

     The ALJ compounded this error by conclusively applying "the grids" to determine that the claimant was disabled despite a significant nonexertional impairment, *i. e.*, pain. "The grids" are rules promulgated by the Commissioner for determining disability based on a claimant's RFC category, age, education and work experience. *See Channel v. Heckler,* 747 F.2d 577, 579-80 & n.3 (10th Cir. 1984) (per curiam). An ALJ may rely conclusively on "the grids" to find that a claimant is not disabled if: (i) the claimant has no significant nonexertional impairment, (ii) the claimant can do the full range of work at some RFC level on a daily basis, and (iii) the claimant can perform most of the jobs in that level. "Each of these findings must be supported by substantial evidence." *Thompson*, 987 F.2d at 1488. Thus, use of "the grids" is inappropriate if a claimant has a nonexertional impairment, unless the evidence supports a finding that such impairment is insignificant. *Id.* at 1492; 20 C.F.R., pt. 404, subpt. P, app.2, § 200.00(e).

The ALJ thus failed to account for the claimant's pain (disabling or otherwise) in formulating his RFC and determining what work, if any, the claimant could perform with his level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, 1994 WL 266742, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [quotation omitted]. The decision of the Commissioner should therefore be reversed and the case remanded for further analysis.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**